<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| MARCUS VARGAS, | : | |
| | : | |
| Petitioner, | : | Civil No. 12-3439 (JLL) |
| | : | |
| v. | : | **OPINION** |
| | : | |
| CHARLES WARREN, et al., | : | |
| | : | |
| Respondents. | : | |

**LINARES, DISTRICT JUDGE**

 Petitioner Marcus Vargas ("Petitioner"), a prisoner currently confined at New Jersey State

Prison in Trenton, New Jersey, has submitted a petition for a writ of habeas corpus pursuant to 28

U.S.C. § 2254.   For the reasons stated herein, the petition will be denied.[1]

**I. BACKGROUND**

 This Court, affording the state court's factual determinations the appropriate deference, *see*

28 U.S.C. § 2254(e)(1)[2] will recount salient portions of the recitation of facts as set forth by

Appellate Division on direct appeal:

> Fifteen year old Lysandra Mercado at about 2:10 a.m. on July 2, 1997 was walking
> with her boyfriend, seventeen year old Edwin Figueroa in Perth Amboy, when they
> realized that they were being pursued by three or four individuals.   They tried to
> lose their pursuers, but were eventually surrounded and stopped.   A small gun was
> pushed into Figueroa's back and money was demanded.   Figueroa handed his

---

[1] To the extent that Petitioner's claims may be unexhausted, this Court will deny them on the
merits pursuant to 28 U.S.C. § 2254(b) (2) ("An application for a writ of habeas corpus may be
denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available
in the courts of the State") and deny Petitioner's request for a stay as moot.   (ECF Nos. 30-31.)

[2] Pursuant to 28 U.S.C. § 2254(e)(1), "In a proceeding instituted by an application for a writ of
habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of
a factual issue made by a State court shall be presumed to be correct. The applicant shall have the
burden of rebutting the presumption of correctness by clear and convincing evidence."

wallet to the man with the gun and the assailants ordered Figueroa and Mercado to lie face down on the ground.

While Mercado was lying on the ground, one of the men pushed something hard into her back and ripped off the two silver chains she was wearing.   Figueroa asked the men not to hurt Mercado and one replied, "we don't hurt girls."   Shortly thereafter, Mercado heard a single gunshot and the assailants disappeared. Mercado, who had not had a sufficient opportunity to identify her attackers, eventually sat up and told Figueroa to get up, but he told her that he had been shot. Mercado called the police at a nearby pay phone.   Figueroa later bled to death as a result of being shot in the chest.

The police investigation initially focused on four individuals, two of whom were soon indicted for armed robbery of Mercado and Figueroa and the murder of Figueroa.   Subsequent investigation, however, eventually led to defendant and co-defendants Patrick D'Aiuto, Dennis Galan, and Norberta Caraballo, and the initial indictment against the two other individuals was dismissed.

During the investigation, Caraballo admitted that at the time of the murder he lived in a motel with defendant, who was a long-time associate.   D'Aiuto, Galan and Caraballo confessed to the robbery and participation in the murder and identified defendant as the shooter.   Shortly thereafter, John Maslak, an investigator from the Middlesex County Prosecutor's Office, traveled to California, where defendant was living.   Defendant initially denied any involvement in the robbery/murder. However, after Maslak told defendant that he had been implicated by the three other participants and identified by Caraballo as the shooter, defendant gave a statement.

In his statement, defendant claimed that he decided not to participate in the robbery and walked off alone to conduct a drug deal.   Defendant told Maslak that he saw Caraballo shoot one of the victims, and that Caraballo had stated that the gun had "gone off" and he did not know whether he had hit one of the victims.

At defendant's trial, D'Aiuto and Galan testified against defendant for the State pursuant to a plea bargain.   They recounted that they were driving around looking for a gas station to rob, but decided instead to rob Mercado and Figueroa.   Both D'Aiuto and Galan testified that defendant had shot Figueroa.   When Caraballo asked defendant why he shot the victim, defendant laughingly said he shot Figueroa "in the ass" because he wanted to scare him.   According to Galan, he later asked defendant why he shot Figueroa and defendant replied that he "just wanted to see what it felt like to shoot someone."

Defendant did not testify at trial, but had his girlfriend testify that she was with defendant at the Circle Motor Lodge three times during the week of the murder from 10:30 p.m. to 3:30 p.m.   In addition, defense counsel placed before the jury testimony by an investigator about the four other suspects, including the two

2

persons who had been previously indicted for the same crimes for which defendant was now being prosecuted.

*State v. Vargas*, A-5478-99T4 (N.J. Super. Ct. App. Div. Feb. 21, 2003).

The jury convicted Petitioner of murder, N.J.S.A. 2C:11-3(a)(l) or (2); felony murder, N.J.S.A. 2C:11-3(a)(3); first-degree conspiracy to commit robbery, N.J.S.A. 2C:5-2; second-degree possession of a firearm for an unlawful purpose, N.J.S.A. 2C:39-4(a); and two counts of first degree robbery, N.J.S.A. 2C:15-1. (*Id.*) During sentencing, the state judge merged the felony murder conviction into the murder conviction and the conspiracy to commit armed robbery and the weapon possession convictions into the two first-degree robbery convictions. (*Id.*) He then sentenced Petitioner on the murder conviction to life imprisonment, with 63 3/4 years of parole ineligibility, pursuant to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2; for one of the robberies to a concurrent fifteen-years imprisonment; and for the other robbery to a consecutive fifteen-years imprisonment, with 12 ½ years of parole ineligibility, pursuant to N.J.S.A. 2C:43-7.2. (*Id.*) On direct appeal, the Appellate Division affirmed all of the convictions but remanded for imposition of a mandatory parole disqualifier under N.J.S.A. 2C:11-3(b)(1) or N.J.S.A. 2C:43-7(a) (6), a restitution hearing, reconsideration of financial penalties, and amendment of the judgment of conviction. (*Id.*) The Supreme Court of New Jersey denied the petition for certification. *State v. Vargas*, 827 A.2d 291 (N.J. 2003).

Petitioner filed a petition for post-conviction relief on February 17, 2004, and the trial court denied the petition on September 25, 2006. *State v. Vargas*, 2009 WL 586742 (N.J. Super. Ct. App. Div. Mar. 10, 2009). On appeal, the Appellate Division reversed that decision and remanded the matter to the lower court for an evidentiary hearing. *Id.* On remand, the court conducted a hearing and again denied the petition. *State v. Vargas*, 2011 WL 4444477 (N.J.

Super. Ct. App. Div. Sept. 27, 2011).   The Appellate Division affirmed that denial on appeal, *id.,*

and the Supreme Court of New Jersey denied certification, *State v. Vargas*, 40 A.3d 57 (N.J. Mar.

22, 2012).

Petitioner filed the instant habeas petition on May 29, 2012.   (ECF No. 1.)   He raises the

following grounds:

> GROUND ONE: TRIAL COUNSEL "DAVID R. OAKLEY" WAS
> INEFFECTIVE FOR FAILING TO SUBMIT, TWO WITNESSES
> STATEMENTS THAT WERE EXCULPATORY IN NATURE AND
> FAVORABLE TO THE DEFENSE, TRIAL COUNSEL WITHHELD
> MATERIAL EVIDENCE FROM THE PETITIONER, THE STATE, AND
> FAILED TO INCLUDE THEM TO [sic] PETITIONER'S DISCOVERY THIS
> VIOLATED PETITIONER'S RIGHT TO DUE PROCESS, AS GUARANTEED
> BY THE UNITED STATES CONSTITUTION AND THE FIFTH, SIXTH AND
> FOURTEENTH, AMENDMENTS THERETO.
>
> GROUND TWO: THE APPELLATE DIVISION ERRED WHEN IT
> CONSTRUCTED THEIR OPINION ON FACTS NOT SUPPORTED BY
> WITNESS STATEMENTS, TESTIMONY, DISCOVERY OR EVIDENCE. THIS
> VIOLATED PETITIONER'S RIGHT TO DUE PROCESS AS GUARANTEED
> BY THE UNITED STATES CONSTITUTION, AND THE FIFTH AND
> FOURTEENTH AMENDMENT THERETO.
>
> GROUND THREE: TRIAL COUNSEL (DAVID R. OAKLEY ESQ.)
> PROVIDED INEFFECTIVE ASSISTANCE OF COUNSEL BY FAILING TO
> CALL AN EXCULPATORY WITNESS FOR THE DEFENSE THAT WOULD
> OF CHANGE [sic] THE OUTCOME OF THE TRIAL. THIS VIOLATED
> PETITIONER'S DUE PROCESS RIGHTS, AS GUARANTEED BY THE
> UNITED STATES CONSTITUTION, AND THE FIFTH AND FOURTEENTH
> AMENDMENTS THERETO.
>
> GROUND FOUR: PETITIONER SUBMITS THERE WAS A CONFLICT OF
> INTEREST WHERE APPOINTED COUNSEL ON REMAND (MICHAEL G.
> PAUL ESQ.), WAS RE-APPOINTED AFTER PETITIONER MADE CLAIMS
> DURING THE INITIAL POST CONVICTION RELIEF PROCEEDINGS
> UNDER DOCKET NO. A-2104-06T4 THAT PCR COUNSEL WAS
> INEFFECTIVE FOR A NUMBER OF REASONS, THIS VIOLATED
> PETITIONER'S RIGHTS, AS GUARANTEED BY THE UNITED STATES
> CONSTITUTION, AND THE FIFTH AND FOURTEENTH AND SIXTH
> AMENDMENTS THERETO.
>
> GROUND FIVE: TRIAL COUNSEL (DAVID R. OAKLEY ESQ.) PROVIDED

CONSTITUTIONALLY INEFFECTIVE ASSISTANCE OF COUNSEL BY FAILING TO OBJECT AND ARGUE AS THE PROSECUTOR BLATANTLY COACHED THE STATES WITNESS THOUGH A WHOLE LINE OF QUESTIONING, THIS VIOLATED PETITIONER'S RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL, AS GUARANTEED BY THE UNITED STATES CONSTITUTION, AND THE FIFTH AND FOURTEENTH AND SIXTH AMENDMENTS THERETO.

GROUND SIX: THE TRIAL COURT'S FAILURE TO GRANT DEFENDANT'S MOTION FOR MISTRIAL AFTER SEVERAL JURORS SAW A RELATIVE OF THE DECEASED VICTIM WEARING A T-SHIRT WITH A PICTURE OF THE VICTIM AND THE WORDS "IN MEMORY" WRITTEN ON IT, VIOLATED PETITIONER'S RIGHT TO A FAIR TRIAL, BY AN IMPARTIAL JURY AND DUE PROCESS, AS GUARANTEED BY THE UNITED STATES CONSTITUTION, AND THE FIFTH AND FOURTEENTH AMENDMENTS THERETO.

GROUND SEVEN: THE COURT'S RULING DENYING POST-CONVICTION-RELIEF VIOLATED DEFENDANT'S RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL, AS GUARANTEED BY THE UNITED STATES CONSTITUTION, AND THE FIFTH AND FOURTEENTH AND SIXTH AMENDMENTS THERETO.[3]

GROUND EIGHT: NUMEROUS INSTANCES OF PROSECUTORIAL MISCONDUCT DEPRIVED PETITIONER OF HIS DUE PROCESS RIGHT, THEREFORE, VIOLATING PETITIONER'S RIGHT TO A FAIR TRIAL, AND DUE PROCESS, AS GUARANTEED BY THE UNITED STATES CONSTITUTION, AND THE FIFTH AND FOURTEENTH AMENDMENTS THERETO.

Respondents filed their Answer to the Petition on January 29, 2013.  (ECF No. 12.)  On

August 13, 2013, Petitioner filed his Reply.  (ECF No. 28.)

## II. DISCUSSION

### A. Legal Standard

As amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28

U.S.C. § 2254 provides, in pertinent part:

---

[3] In this ground, Petitioner appears to be re-raising all of the grounds he already separately raises elsewhere in his petition.  For the reasons more fully discussed below, relief on the other grounds will be denied, and therefore, relief on this ground will also be denied.

(a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

. . .

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding . . . .

28 U.S.C. § 2254.

"As amended by AEDPA, 28 U.S.C. § 2254 sets several limits on the power of a federal court to grant an application for a writ of habeas corpus on behalf of a state prisoner." *Cullen v. Pinholster*, 131 S.Ct. 1388, 1398 (2011); *Glenn v. Wynder*, 743 F.3d 402, 406 (3d Cir. 2014). Section 2254(a) permits a court to entertain only claims alleging that a person is in state custody "in violation of the Constitution or laws or treaties of the United States." *Id.* A federal court's authority to grant habeas relief is further limited when a state court has adjudicated petitioner's federal claim on the merits. *See* 28 U.S.C. § 2254(d).[4] If a claim has been adjudicated on the

---

[4] "[A] claim has been 'adjudicated on the merits in State court proceedings' when a state court has made a decision that finally resolves the claim based on its substance, not on a procedural, or other, ground." *Lewis v. Horn*, 581 F.3d 92, 100 (3d Cir. 2009) (quoting *Thomas v. Horn*, 570 F.3d 105, 117 (3d Cir. 2009)). "Section 2254(d) applies even where there has been a summary denial." *Cullen*, 131 S.Ct. at 1402. "In these circumstances, [petitioner] can satisfy the 'unreasonable application' prong of § 2254(d)(1) only by showing that 'there was no reasonable basis' for the [state court's] decision." *Id.* (quoting *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011)); *see also Johnson v. Williams*, 133 S.Ct. 1088 (2013) ("When a state court rejects a federal claim without

6

merits in state court proceedings, this Court "has no authority to issue the writ of habeas corpus unless the [state court's] decision 'was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States,' or 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'"   *Parker v. Matthews*, 132 S.Ct. 2148, 2151 (2012) (quoting 28 U.S.C. § 2254(d)).   However, when "the state court has not reached the merits of a claim thereafter presented to a federal habeas court, the deferential standards provided by AEDPA . . . do not apply."   *Lewis*, 581 F.3d at 100 (quoting *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001)).

A court begins the analysis under § 2254(d)(1) by determining the relevant law clearly established by the Supreme Court.   *See Yarborough v. Alvarado*, 541 U.S. 652, 660 (2004). Clearly established law "refers to the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision."   *Williams v. Taylor*, 529 U.S. 362, 412 (2000).   A court must look for "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision."   *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003).   "[C]ircuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court,' [and] therefore cannot form the basis for habeas relief under AEDPA."   *Parker*, 132 S.Ct. at 2155 (quoting 28 U.S.C. § 2254(d)(1)).

A decision is "contrary to" a Supreme Court holding within 28 U.S.C. § 2254(d)(1), if the state court applies a rule that "contradicts the governing law set forth in [the Supreme Court's] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a [different result.]"   *Williams*, 529 U.S. at 405–06. Under the "'unreasonable application' clause of § 2254(d)(1), a federal habeas court may grant the

---

expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits—but that presumption can in some limited circumstances be rebutted").

writ if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413.  However, under § 2254(d)(1), "an unreasonable application of federal law is different from an incorrect application of federal law." *Harrington v. Richter*, 131 S.Ct. 770, 785 (2011) (quoting *Williams*, 529 U.S. at 410).  As the Supreme Court explains,

> a state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision.... Evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations. It is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court.

*Harrington*, 131 S.Ct. at 786 (citations and internal quotation marks omitted).

"If this standard is difficult to meet—and it is—that is because it was meant to be." *Burt v. Titlow*, 134 S.Ct. 10, 16 (2013) (citations and internal quotation marks omitted).  The petitioner carries the burden of proof, and review under § 2254(d) is limited to the record that was before the state court that adjudicated the claim on the merits. *Cullen*, 131 S.Ct. at 1398.

**B. Analysis**

**1.  Ineffective Assistance of Counsel (Grounds One, Three, Four and Five)**

In his first and third grounds for relief, Petitioner argues that his trial counsel provided ineffective assistance when he failed to introduce the testimony of Ms. Martinez, which would have exculpated Petitioner.  (Pet'r's Br. 16-19; 22-31.)   In his fourth ground for relief, Petitioner argues that his PCR counsel was ineffective for failing to investigate a witness and for failing to contact a witness.   (Pet'r's Br. 31-38.)[5]   In his fifth ground for relief, Petitioner argues that trial

---

[5] Under 28 U.S.C. § 2254(i), "[t]he ineffectiveness or incompetence of counsel during Federal or

counsel provided ineffective assistance when he failed to object and argue that the prosecutor was "coaching" a witness.   (Pet'r's Br. 38-42.)

The Sixth Amendment, applicable to states through the Due Process Clause of the Fourteenth Amendment, guarantees the accused the "right . . . to have the Assistance of Counsel for his defense."   U.S. Const. amend. VI.   The right to counsel is the right to the effective assistance of counsel, and counsel can deprive a defendant of the right by failing to render adequate legal assistance.   *See Strickland v. Washington*, 466 U.S. 668, 686 (1984).

A claim that counsel's assistance was so defective as to require reversal of a conviction has two components, both of which must be satisfied.   *See Strickland*, 466 U.S. at 687.   First, the defendant must "show that counsel's representation fell below an objective standard of reasonableness."   *Id*. at 687-88.   "[C]ounsel should be 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'"   *Cullen*, 131 S.Ct. at 1403 (citing *Strickland*, 466 U.S. at 690).   "To overcome that presumption, a defendant must show that counsel failed to act 'reasonabl[y] considering all the circumstances.'"   *Id.* (citing *Strickland*, 466 U.S. at 688).

Further, a "convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment."   *Id.* at 690.   The court must then determine whether, in light of all the circumstances at the time, the identified errors were so serious that they were outside the wide range of professionally competent assistance.   *Id.*

---

State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254."   Accordingly, Petitioner's request for relief on this ground is denied.
*Accord Taylor v. Horn*, 504 F.3d 416, 437 (3d Cir. 2007).

To satisfy the prejudice prong, the defendant must show that "there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id*. at 695.   "It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding' . . . Counsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'"   *Harrington*, 131 S.Ct. at 788 (citing *Strickland*, 466 U.S. at 687).   As the Supreme Court explained,

> in making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury. Some of the factual findings will have been unaffected by the errors, and factual findings that were affected will have been affected in different ways. Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect. Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support. Taking the unaffected findings as a given, and taking due account of the effect of the errors on the remaining findings, a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors.

*Strickland*, 466 U.S. at 695-96.

The Supreme Court instructs that a court need not address both components of an ineffective assistance claim "if the defendant makes an insufficient showing on one."   *Strickland*, 466 U.S. at 697.   "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."   *Id.*

**a. Ms. Martinez**

In his first and third grounds for relief, Petitioner essentially argues that trial counsel provided ineffective assistance when he failed to call Ms. Martinez as a witness during trial and

failed to use the two statements she gave to counsel's investigator.   Petitioner initially raised this

issue in his PCR petition, the denial of which was appealed to the Appellate Division.   The

Appellate Division provided the following context for this issue:

> Defendant, Norberto Caraballo, Patrick D'Aiuto and Dennis Galan were charged
> with the crimes.   During the investigation, all three of his codefendants told the
> detectives that defendant shot Figueroa.   Defendant gave the detective a different
> account of the crime.   He claimed that he decided not to participate in the robbery,
> walked away from the others and saw Caraballo shoot the victim.   Defendant
> alone was charged with murder; his codefendants were charged with felony
> murder.   D'Aiuto and Galan testified for the State at trial; neither defendant nor
> Caraballo testified.
>
> Defendant's only witnesses at trial were an investigator who testified about other
> persons the police had suspected and a woman who gave testimony to establish that
> defendant was with her and not at the scene of these crimes. "[T]he defense's theory
> of the case" was that the detective who obtained defendant's statement coerced him
> "into making a false statement placing him[self] at the scene of the crimes, when
> instead he was with his girlfriend."
>
> When defendant's alibi witness completed her testimony, defense counsel advised
> the court that he had one more witness, Martinez.   Counsel proffered that Martinez
> would testify that on two separate occasions she heard Caraballo admit he was the
> person who shot Figueroa.   The trial court granted the assistant prosecutor's
> request for a hearing on the admissibility of Martinez's testimony, but, for reasons
> not stated on the record, defense counsel abandoned his plan to call Martinez and
> rested the case for the defense.

*State v. Vargas*, 2009 WL 586742, at * 1-2 (N.J. Super. Ct. App. Div. Mar. 10, 2009) (internal

citations omitted).   The Appellate Division went on to hold that the lower court should have held

an evidentiary hearing and it remanded the matter for such a hearing.   (*Id.*)

After conducting an evidentiary hearing, where both Petitioner and his trial counsel

testified, the state court found as follows:

> Under the *Strickland*…standard, first, the defendant must show that counsel's
> performance was deficient.   This requires a showing that counsel made errors so
> serious that counsel was not functioning as the 'counsel' guaranteed the defendant
> by the Sixth Amendment. Second, the defendant must show that the deficient

performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

A review of the trial transcript contradicts the defendant's statement that Oakley told him Martinez could not testify because she walked into the courtroom prematurely.  The transcript at T I 02-L 7-19 reveals that the State was asking for a R. 104 hearing relating to Martinez's statements in light of the fact that the State had not received copies of her statements or heard about the statements prior to the defense request to address them before the jury.  The trial transcript at T19-L18 reveals that a defense witness of whom it does not name did walk into the courtroom during the testimony of a defense witness Mr. Caparotta.  (Mr. Oakley stated it was someone named Catena but that could not be the case because Catena was a male and the person who walked into the courtroom was a female).  Oakley was allowed to leave the courtroom to tell the witness not do come into the court room or look into the window.  When he returned the trial continued with the testimony of defense witness Caparotta.  Mr. Caparotta [sic] testimony was concluded and Mr. Oakley then called Ms. Mercado.  Oakley apparently was still arguing for the opportunity to allow Ms. Martinez to testify and it was because of his wish to have Martinez testify at the time that the State asked for the R. 104 hearing. Mr. Oakley appears not to have decided not to call Martinez because she walked into the courtroom but as he testified, because he felt that the witness Mercado had done a very good job during her testimony regarding the alibi defense and Martinez's testimony would have only destroyed all the good he felt Mercado's testimony had done. Mr. Oakley also testified that in his judgment he did not feel Martinez's testimony could withstand cross examination from the State in that she failed to name the co-defendant during her first statement and he had, though his secretary, hounded her until she gave a second statement naming the codefendant. Mr. Oakley was steadfast during his testimony that the Alibi was the more likely way to proceed.

…

Mr. Oakley at the time of trial was an experienced trial attorney and previously tried at least 15 trials and handled over 200 criminal cases.  Based upon his testimony at this hearing, it's evident to the court that Mr. Oakley's decision was well thought out and was discussed with the defendant prior to taking any action. He testified at the hearing that although he had no independent recollection of the exact wording of the conversation between him and his client about Ms. Martinez's testimony, he does remember discussing the matter with the defendant before resting his case. There is nothing in the hearing testimony that supports the defendant's contention Mr. Oakley was not functioning in a manner, as an attorney or that the trial was so error filled that it prejudiced the defendant and therefore deprived the defendant of his sixth amendment rights.  *State v. Martini*, 160 N.J. 221, (1999).  Hindsight has been said to be twenty/twenty and it is no different in

12

> this case; Mr. Oakley made a strategic decision as to the best way to proceed and took that road.  There is no showing from the defendant's testimony or in his papers or in the trial transcript that convinces this Court, that had Ms. Martinez testified, the jury would have probably returned a verdict other than that which was rendered.  *State v. Preciose*, 129 N.J. 451 (1992). Viewing the contentions in a light most favorable to the defendant, there is nothing in the trial transcript provided to the Court or during the evidentiary hearing that reveals trial counsel did not render reasonable professional judgment during the course of the trial.   During the course of the testimony in this hearing Mr. Oakley convinced this Court that he was an advocate for his client, that he included his client in the decision making process and that his decisions were well reasoned under the circumstances.

*State v. Vargas*, 98-09-1338 (N.J. Super. Ct. Crim. Div. Oct. 30, 2009).   On appeal, the Appellate Division affirmed for "substantially the reasons expressed by Judge Pullen in her memorandum of opinion."   *State v. Vargas*, 2011 WL 4444477, at * 2-3 (N.J. Super. Ct. App. Div. Sept. 27, 2011).

Here, the state courts' adjudication of the claims regarding defense counsel's decision not to utilize Ms. Martinez during trial was not "based on an unreasonable determination of the facts in light of the evidence presented," nor was the decision "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States."   28 U.S.C. § 2254(d).   At the evidentiary hearing, trial counsel unequivocally stated that he made the strategic decision not to put Ms. Martinez on the stand because he had concerns about her ability to withstand cross-examination and he felt that the alibi witness testimony was a stronger point on which to rest their case.[6]   Petitioner argues that the two statements were not contradictory and therefore, the statements should have been utilized.   However, as discussed by

---

[6] The Third Circuit recently decided a case with similar facts regarding potential witness testimony.  *See Branch v. Sweeney*, --- F.3d ----, 2014 WL 3293716 (3d Cir. July 9, 2014).   In *Branch*, the Court of Appeals concluded that based on the record that was before the state court, its decision finding counsel was not ineffective for failing to call two potentially exculpatory witnesses was an unreasonable application of *Strickland*.  *Id.*  However, unlike the state court in *Branch*, the state court in this case held an evidentiary hearing and the state court record shows that counsel had a legitimate strategic reason for not calling Ms. Martinez as a witness.

counsel, in the first statement to the investigator, Ms. Martinez did not identify the individual who claimed to have shot the victim, whereas in the second statement, she did identify the individual. (Pet'r's Reply Da2-3, ECF No. 28.)

The state court discussed *Strickland* at length and it correctly and reasonably applied that decision to the facts of this case.   *See Harrington v. Richter*, 131 S.Ct. 770, 789 (2011) ("Counsel was entitled to formulate a strategy that was reasonable at the time and to balance limited resources in accord with effective trial tactics and strategies.")   Petitioner has failed to overcome the highly deferential standard under *Strickland* and AEDPA and, therefore, the Court will deny habeas relief on these grounds.[7]

**b. Witness Coaching**

In Ground Five, Petitioner argues that trial counsel failed to object when the prosecutor was "coaching" witness Patrick D'Aiuto throughout his testimony.   Specifically, Petitioner states that:

> The prosecution during the trial on the ninth day of February 2000, was blatantly coaching the witness (Patrick D"Aiuto [sic]) through out [sic] (David R. Oakley Esq.) cross, and direct[.]   This witness had a history throughout the case of giving conflicting statements, confessing to lying in order to be a better witness, and even gave a statement inculpating another co-defendant originally, while the coaching was taking place, the petitioner tried on numerous occasions to get trial counsel to object, but for some reason trial counsel put up a fight.   After getting the judges [sic] attention a side bar took place at which time counsel tried to downplay the situation after admitting to witnessing gestures.   The judge took it upon himself to admonish counsel and warned him to keep an eye on it.

(Pet. 14.)   Petitioner raised this claim in his PCR petition and the state court rejected it as being

---

[7] To the extent Petitioner is alleging a separate claim of ineffective assistance of counsel based on trial counsel's failure to provide Petitioner with the "discovery" regarding Ms. Martinez's potential testimony, that claim would also fail.   Based on his statements at the evidentiary hearing, Petitioner was clearly aware of the information Ms. Martinez would have provided if called to the stand and the "discovery" was merely a summary of that potential testimony. Since Petitioner had been made aware of all the information contained in the "discovery," Petitioner has failed to meet the prejudice prong of *Strickland* with regard to this claim.

14

without merit.   *State v. Vargas*, 98-09-1338 (N.J. Super. Ct. Law. Div. Sept. 25, 2006).

Petitioner is not entitled to habeas relief on this ground.   During a side-bar conference at

trial, this specific issue was discussed.

> THE DEFENDANT: Excuse me.
> MR. OAKLEY: Excuse me. No.
> THE COURT: No. No.   Mr. Vargas, just wait a minute. Your attorney will give
> you the attention you want. Write it down.   All right. Go ahead, counsel. You want
> a moment to confer with your client?
> MR. OAKLEY: No.
> THE DEFENDANT: Please. Right now. Please.
> MR. OAKLEY: I'll take a break.
> THE COURT: You want a moment to confer with your client?
> MR. OAKLEY: Please.   Court's indulgence.   Judge, I need a sidebar.
> THE COURT: All right.
>
> (The following is at sidebar.)
>
> MR. OAKLEY: My client says that –
> THE COURT: Keep your voice down.
> MR. OAKLEY: My client says that in answering questions Mr. Kuberiet is either
> consciously or unconsciously
> THE COURT: Making gestures.
> MR. OAKLEY: -- making gestures and I have to confess I do see –
> THE CLERK: You're talking too loud.
> MR. OAKLEY: I have to confess that I do see Mr. Kuberiet's head going up and
> down, but I'm not relating it to him. My client, however, informs me that when Mr.
> D'Aiuto answers well Mr. Kuberiet gives an expression which is affirming and
> when he doesn't answer well he doesn't move.   Judge, I just have to pass this along.
> I can only say I'm seeing Mr. Kuberiet move.
> THE COURT: I've noticed some gestures.   I thought they were conscious.   I hope
> there is no coaching going on with respect to this particular witness.
> MR. OAKLEY: I'm not saying there is, Judge.
> THE COURT: But, counsel, just be aware of that. Okay?
> MR. KUBERIET: Yes, sir.
>
> (Sidebar is concluded.)
>
> (Trial Tr. 153:15-155:7, Feb. 9, 2000.)

Petitioner fails to meet either prong of *Strickland*.   First, it is clear that trial counsel raised

the issue with the court and therefore he cannot be deemed ineffective for failing to raise the issue. Secondly, even if the Court were to find that counsel should have raised it sooner, without the prompting of Petitioner, Petitioner has not met the prejudice prong of *Strickland*. Petitioner argues that counsel allowed the testimony to "go untested," however he has failed to show any conceivable effect on the outcome. The issue was raised with the trial judge, who addressed the situation. Petitioner suffered no prejudice and habeas relief will be denied.

### 2.   Appellate Division Opinion (Ground Two)

In Ground Two of the Petition, Petitioner argues that he is entitled to habeas relief because the Appellate Division misstated a fact in its opinion denying PCR relief. Specifically, after the lower court conducted an evidentiary hearing regarding the ineffective assistance of counsel claim and denied PCR, Petitioner filed an appeal. In its affirmance of the lower court's denial, the Appellate Division stated that "[c]ounsel explained his concerns were based on the jury's apparent negative response to another alleged alibi witness's testimony. Because defendant admitted to shooting the victim, the defense strategy was that defendant was coerced into confessing." *Vargas*, 2011 WL 4444477, at *3. Petitioner argues that there is no evidence that he confessed to shooting the victim anywhere in the record and that the court "must have had petitioner's matter mixed up with someone else." (Pet'r's Br. 20.)

At the outset, it is not clear what federal constitutional right Petitioner is asserting has been violated. Moreover, even if this Court were to reach the merits of his claim, Petitioner is not entitled to relief. To the extent that the Appellate Division misstated exactly what Petitioner had confessed to doing, it is clear that the misstatement did not have any bearing on the court's overall determination that the lower court correctly found that trial counsel had made a strategic decision.

16

The Appellate Division determined that trial counsel had formulated a strategy regarding the possibility of credibility problems and that was his reason for not calling Ms. Martinez as a witness; whether Petitioner had confessed to shooting the victim or simply being present was not relevant to the court's determination that trial counsel had a strategic reason for not calling that particular witness.   Reading the opinion as a whole, it is readily apparent that the Appellate Division read and agreed with the lower court's determination that it was a strategic decision on the part of counsel.   Habeas relief will be denied on this claim.

**3.   Juror Impartiality (Ground Six)**

In his sixth ground for relief, Petitioner argues that it was a violation of his rights when the trial court failed to grant a mistrial when a relative of the murder victim came into the courtroom wearing a shirt with the victim's photograph and the words "In Loving Memory of Edwin Figueroa."   (Pet'r's Br. 43-45.)

Petitioner raised this issue on direct appeal.   The Appellate Division denied relief, stating:

Defendant also contends that the trial judge should have granted a mistrial after the jury was exposed to a T-shirt bearing a picture of the victim and the words "In loving memory of Edwin Figueroa." A motion for a mistrial should be granted only in those situations where continuing the trial would result in manifest injustice. *State v. DiRienzo*, 53 N.J. 360, 383 (1969). The decision to deny a motion for mistrial is within the sound discretion of the trial judge. *State v. Winter*, 96 N.J. 640, 647 (1984).

Defendant is "entitled to a jury that is free of outside influences and will decide the case according to the evidence and arguments presented in court in the course of the criminal trial itself." *State v. Williams*, 93 N.J. 39, 60 (1983). Thus, when a jury is potentially contaminated by outside influences, the trial judge must take action to assure that the jurors have not become prejudiced as a result of facts or occurrences which "could have a tendency to influence the jury in arriving at its verdict in a manner inconsistent with the legal proofs and the court's charge." *State v. Scherzer*, 301 N.J. Super. 363, 486 (App. Div.), *certif. denied*, 151 N.J. 466 (1997) (quoting *Panko v. Flintkote Co.*, 7 N.J. 55, 61 (1951)).

Here, the trial judge took swift and appropriate action after being alerted to the

presence of the T-shirt in the courtroom. *See State v. Bisaccia*, 319 N.J. Super. 1, 12-13 (App. Div. 1999). His voir dire of the jurors revealed that only two jurors had actually seen portions of the shirt and each assured the judge that they could impartially decide the case. Although no specific limiting instruction was requested or given, presumably because this would have highlighted the matter for the entire jury, the two jurors with knowledge of the shirt were told not to discuss it with each other or with their fellow jurors. Under these circumstances, we reject defendant's argument and conclude that the presence of the T-shirt in the courtroom did not have the capacity to influence the result in this case.

*State v. Vargas*, A-5478-99T4 (N.J. Super. Ct. App. Div. Feb. 21, 2003).

[T]he remedy for allegations of juror partiality is a hearing in which the defendant has the opportunity to prove actual bias....

[D]ue process does not require a new trial every time a juror has been placed in a potentially compromising situation. Were that the rule, few trials would be constitutionally acceptable. The safeguards of juror impartiality, such as voir dire and protective instructions from the trial judge are not infallible; it is virtually impossible to shield jurors from every contact or influence that might theoretically affect their vote.

*Smith v. Phillips*, 455 U.S. 209, 215-217, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982).

Thus, when there is an allegation of juror partiality, the trial judge must "'determine the circumstances, the impact thereof upon the juror, and whether or not [they were] prejudicial, in a hearing with all interested parties permitted to participate.'" *Id.* at 216 (quoting *Remmer v. United States*, 347 U.S. 227, 230, 74 S.Ct. 450, 98 L.Ed. 654 (1954)); *Scott v. Bartkowski*, 11-3365 (SRC), 2013 WL 4537651, at * 38-9 (D.N.J. Aug. 27, 2013) (discussing standard).

Here, the trial judge promptly addressed the issue of the t-shirt in the courtroom, conducted voir dire of the jurors, and made a determination that it would not impact the jurors.   Petitioner has made no showing of actual prejudice and he is not entitled to relief on this claim.

## 4. Prosecutorial Misconduct (Ground Eight)

In his final ground for relief, Petitioner argues that during his closing remarks, the

18

prosecutor disparaged Petitioner and defense counsel by making repeated reference to "Plan B"

from a television show; mischaracterized the state's burden to prove Petitioner's guilt; and stated

that Petitioner tried to "fool" police and that they should not let him "fool" them.   Petitioner raised

this claim on direct appeal, where it was rejected by the Appellate Division:

> Defendant also contends that the prosecutor's misconduct during summation
> warrants reversal of his convictions. Defendant first argues that the prosecutor
> accused defense counsel of aiding defendant in fabricating a defense by arguing
> that "plan A, [was] I'm at the scene watching Caraballo shoot Edwin Figueroa."
> Then, after defendant discovered the law of felony murder, "plan B ... the statement
> is coerced and I'm in the hotel with my girlfriend, however, I still know Caraballo
> did it." The prosecutor then said "[t]hat's preposterous."
>
> It is improper for prosecutors to denigrate the defense. *State v. Darrian*, 255 N.J.
> Super. 435, 457 (App. Div.), certif. denied, 130 N.J. 13 (1992). But, that is not what
> happened here. Instead, the prosecutor was properly commenting upon the
> implausibility of defendant's theory of the case. *State v. Gomez*, 246 N.J. Super.
> 209, 223 (App. Div. 1991).
>
> Next, defendant argues that the prosecutor improperly provided the jury with an
> incorrect definition of reasonable doubt which mischaracterized and diluted the
> State's burden of proof. The objectionable remarks were:
>
>> And when you retire, members of the jury, do not hesitate for one
>> moment. There is no reasonable doubt here, only the appearance of
>> doubt. Only an appearance because if the doubt were truly
>> reasonable you would not have to be directed to it. Only an
>> appearance because if the doubt were truly reasonable you would
>> not have to be reminded of it. Only an appearance because if the
>> doubt were truly reasonable you would not have to be persuaded of
>> it. Make no mistake about it, members of the jury, if the doubt were
>> truly reasonable you would have found it without one word being
>> said.
>
> These remarks would have been better left unsaid, but were not sufficiently
> prejudicial or egregious to require a new trial. After defense counsel objected, the
> trial judge instructed the jury that if his instructions on reasonable doubt or any
> other legal matter differed from what counsel stated, the jury must "totally
> disregard what counsel said." The judge later provided the jury with a flawless
> reasonable doubt instruction.  Considering the objectionable remarks within the
> context of these instructions, we cannot conclude that the conduct was so egregious
> that it deprived defendant of a fair trial. *State v. Ramseur*, 106 N.J. 123, 322 (1987).

Lastly, defendant argues that the prosecutor improperly urged the jury to "strike a blow for law and order" by convicting defendant. The prosecutor stated "[t]he State only asks for justice, justice based on the evidence, nothing more, but absolutely nothing less . . . . The evidence shows [defendant] did it. The verdict should, too. [Defendant] has tried to fool the police and don't let [defendant] fool you." In our view, this argument was not a plea for conviction based upon a general sense of societal responsibility. The argument simply referenced the State's position that defendant had not told the truth in his statement, and in no way suggested that defendant should be convicted regardless of the evidence against him. Accordingly, we reject this argument along with all of the other arguments regarding prosecutorial misconduct.

*State v. Vargas*, A-5478-99T4 (N.J. Super. Ct. App. Div. Feb. 21, 2003).

Prosecutorial misconduct may "so infect[ ] the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974). This occurs only if the misconduct constitutes a "failure to observe that fundamental fairness essential to the very concept of justice." *Id.* at 642; *see also Greer v. Miller*, 483 U.S. 756, 765, 107 S.Ct. 3102, 97 L.Ed.2d 618 (1987) (To violate due process, "the prosecutorial misconduct must be of sufficient significance to result in the denial of the defendant's right to a fair trial") (citation and internal quotation marks omitted). It is not enough to show that the prosecutor's conduct was universally condemned. *See Darden v. Wainwright*, 477 U.S. 168, 181, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986). The quantum or weight of the evidence is crucial to determining whether the prosecutor's statements before the jury were so prejudicial as to result in a denial of due process. *See Darden*, 477 U.S. at 182; *Donnelly*, 416 U.S. at 644; *Moore v. Morton*, 355 F.3d 95, 111 (3d Cir. 2001).

Here, the prosecutor's comments during closing remarks did not infect his trial with unfairness so as to make the resulting conviction a denial of due process under *Donnelly*, 416 U.S. at 643. *See Gooding v. Wynder*, 2012 WL 207068 (3d Cir. Jan. 25, 2012) (applying *Donnelly* test

to prosecutor's comments at various stages of trial).   As correctly stated by the trial court, the prosecutor properly commented on the defense's theory of the case and what it perceived as Petitioner's lack of truthfulness.   Moreover, to the extent the prosecutor misstated or misconstrued the burden of proof, the trial judge remedied that by providing the jury with the correct burden of proof required in his instructions.   In no way can these issues be considered to have "infected the trial with unfairness so as to make the resulting conviction a denial of due process."   Thus, the New Jersey courts' adjudication of Petitioner's prosecutorial misconduct claims was not contrary to, or an unreasonable application of Supreme Court precedent, and Petitioner is not entitled to habeas relief on these grounds.

**5.   Petitioner's Supplemental Motions**

After filing his Reply, Petitioner filed several motions.   First, he filed a motion for "expansion of the record" and appointment of counsel.   (ECF No. 29).   Petitioner is seeking an "expansion of the record" to include his own certification because he states that he was not permitted to testify at the state court evidentiary hearing.   However, Petitioner did in fact testify at the state evidentiary hearing.   (PCR H'rg Tr. 67:16-94:2, Sept. 9, 2009, ECF No. 22-2.) Therefore, Petitioner's requests for an evidentiary hearing and/or "expansion of the record" are denied.   Further, since the petition is being denied in its entirety, Petitioner's request for appointment of counsel is denied as moot.

**III. CERTIFICATE OF APPEALABILITY**

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254.   A certificate of appealability may issue "only if the applicant has made a substantial

showing of the denial of a constitutional right."   28 U.S.C. § 2253(c)(2).   "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."   *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

Here, Petitioner has failed to make a substantial showing of the denial of a constitutional right.   Thus, no certificate of appealability shall issue.

## IV.   CONCLUSION

For the above reasons, the § 2254 habeas petition is denied, and a certificate of appealability will not issue.   An appropriate Order follows.


Dated: August 8, 2014


                                        s/ Jose L. Linares
                                        Jose L. Linares, U.S.D.J.